UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TOMMY COOK,                              *
                                         *
        Plaintiff,                       *
                                         *
    v.                                   *        Civil Action No. 17-cv-11764-IT
                                         *
NANCY A. BERRYHILL, Acting               *
Commissioner of Social Security,         *
                                         *
        Defendant.                       *

MEMORANDUM & ORDER

November 16, 2020

TALWANI, D.J.

        Pending before the court is Plaintiff Tommy Cook's Motion for Attorney's Fees [#34]

under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the following reasons,

the court ALLOWS Plaintiff's request for fees, as modified below.

**I.      Background**

        In February 2007, while working as a truck driver, Plaintiff fell and injured his right

shoulder while climbing into his truck. Tr. 519.[1] Between 2007 and 2014, he was treated by

orthopedic surgeon Dr. Henry Toczylowski and underwent multiple surgeries for his injury. Tr.

24. In March 2014, Plaintiff filed a Social Security application for a period of disability and

disability insurance benefits, which an administrative law judge ("ALJ") denied in August 2016.

Tr. 19, 22. The ALJ found that Plaintiff was not disabled because he had "the residual function

capacity to perform light work as defined in 20 CFR 404.1567(b) except that lifting and/or

---

[1] Consistent with the prior proceedings in this case, this order uses "Tr." to refer to the page
number in the lower right corner of the Administrative Record [#12].

carrying is limited to his left upper extremity although his right dominant arm can be used for support but not above shoulder level." Tr. 31. In reaching that decision, the ALJ wrote that he had "given significant weight to the December 1, 2011, opinion of Dr. Toczylowski that the claimant was unable to use his right upper extremity for repetitive or overhead activities." Tr. 39. The ALJ further noted that Plaintiff "could lift only 5-10 pounds, and only 5 pounds up to and above his shoulder." Tr. 39. However, the ALJ mischaracterized Dr. Toczylowski's 2011 opinion, which was that Plaintiff was "disabled from all work which requires overhead lifting or repetitive use of the right or left upper extremities"; that "above the shoulder he is unable to lift 5 pounds with an extended arm in front of him"; and that he had "minimal lifting capacity at shoulder level and virtually no significant lifting capacity above shoulder level." Tr. 515-16. The Appeals Council denied review, thereby affirming the ALJ's decision. Tr. 1.

In September 2017, Plaintiff filed a Complaint [#1] in this court against the Acting Commissioner of Social Security ("Commissioner") seeking judicial review. On summary judgment, the court found that (1) the ALJ had inaccurately characterized Dr. Toczylowski's opinion; (2) the ALJ's failure to provide any reasons for the discrepancy made it "impossible to determine whether [the ALJ] merely discredited [Dr. Toczylowski's] assessment or, in fact, overlooked [it]," Nguyen v. Callahan, 997 F. Supp. 179, 182 (D. Mass. 1998); (3) no other evidence in the record supported the ALJ's conclusion that Plaintiff could use his arm for support; (4) the ALJ's mischaracterization informed his opinion of Plaintiff's residual capacity function and the hypothetical he posed to a Vocational Expert during the hearing; and (5) the residual capacity function assessment and Vocational Expert testimony about Plaintiff's ability to perform certain jobs affected the ALJ's ultimate decision that Plaintiff was not disabled. Order 4-7 [#27]. The court therefore concluded that the ALJ's determination was not supported by

substantial evidence and remanded the case for a *de novo* hearing on whether Plaintiff was disabled because "the record does not provide sufficient information about the jobs in question for this court to conclude the Vocational Expert would have provided the same testimony and reached the same conclusions in response to a hypothetical that accurately described Cook's limited ability to use his right arm, as described by Dr. Toczylowski." Id. at 8. The Commissioner filed a Motion for Reconsideration [#29], which this court denied. Mem. and Order [#33].

Plaintiff has now filed a Motion for Attorney's Fees [#34] requesting $10,575.18 in attorney's fees and $1,335.95 in expenses pursuant to the EAJA. Plaintiff also filed a Supplemental Motion for Attorney's Fees [#42] requesting an additional $1,733.00 in attorney's fees based on subsequent hours worked on the fee motion.

## II.    Discussion

Absent action by Congress, the federal government is not liable for an opposing party's attorney's fees for two reasons. First, the so-called "American rule" provides that the prevailing party in litigation "is not entitled to collect [attorney's fees] from the loser" absent exceptional circumstances. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001). Second, the doctrine of sovereign immunity shields the federal government from suit—and the requirement that it pay an opposing party's attorney's fees— unless it expressly waives that immunity. See United States v. Mitchell, 445 U.S. 535, 538 (1980).

Enacted in 1980, the EAJA is a "partial waiver" of sovereign immunity that permits awards of attorney's fees against the federal government in a variety of judicial and administrative proceedings. 28 U.S.C. § 2412(d)(1)(A). "The EAJA aims to 'ensure that certain

3

individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" Castaneda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013) (quoting Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009)). For a plaintiff to recover attorney's fees under the EAJA, the following conditions must be met:

      (1) the plaintiff must be a prevailing party;

      (2) the application for attorney's fees, including an itemized justification for the amount requested, must be filed within thirty days of the final judgment in the action;

      (3) no special circumstances warranting denial of fees may exist; and

      (4) the government's position must be without substantial justification.

28 U.S.C. § 2412(d). See also Castaneda-Castillo, 723 F.3d at 68-69.

      The Commissioner neither contests that Plaintiff is a prevailing party nor raises any special circumstances that would make an award of fees against the government unjust. But the Commissioner claims that Plaintiff's request for attorney's fees should be denied because it was untimely and because the government's position was substantially justified. Opp. 2-8 [#39]. In addition, the Commissioner requests that if the court deems an EAJA award appropriate, Plaintiff's fees should be reduced because travel is not reimbursable at the same rate as substantive legal work. Id. at 8. The court considers these arguments in turn.

      A.    *Timeliness*

      The EAJA requires that a plaintiff file an application for attorney's fees within thirty days of the "final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). "Final Judgment" is defined as a judgment that is "final and not appealable." 28 U.S.C. § 2412(d)(2)(G). Because the Commissioner has sixty days in which to appeal, a judgment of the sort at issue here becomes final sixty days after entry. Fed. R. App. P. 4(a)(1)(B). The plaintiff then has thirty days in which

4

to the file the application, so a request for attorney's fees is timely if filed within ninety days of the entry of judgment.

Here, the court entered judgment on September 27, 2018. The Commissioner moved for reconsideration on October 25, 2018, and the court denied that motion on October 28, 2019. The judgment therefore became final on December 29, 2019, and Plaintiff had thirty days from that date, or until January 26, 2020, to file an application for attorney's fees. However, because January 26, 2020 was a Sunday, the deadline was extended to January 27, 2020. See Fed. R. Civ. P. 6(a)(1)(C). Plaintiff filed his Motion for Attorney's Fees [#34] at 6:05 p.m. on January 27, 2020.

The United District Court for the District of Massachusetts has implemented a local rule pursuant to Fed. R. Civ. P. 6(a)(4)(A), requiring that all electronic transmissions of documents be completed prior to 6:00 p.m. to be considered timely. Local Rule 5.4(d). The Commissioner argues that this five-minute delay renders Plaintiff's motion untimely, as it must be considered filed on January 28, 2020. Opp. 2 [#39]. The court disagrees.

The first principle of the Federal Rules of Civil Procedure is that the Rules—and, by extension, any local rules enacted pursuant to the authority granted by the Federal Rules— "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In addition, the court "has broad discretion in the administration and enforcement of its own local rules" and may deviate from those rules if (1) it has "a sound reason for doing so" and (2) "no party's substantial rights are unfairly jeopardized." Puerto Rico Am. Ins. Co. v. Rivera-Vazquez (1st Cir. 2010) (quoting United States v. Diaz–Villafane, 874 F.2d 43, 46 (1st Cir.1989))

(internal quotations omitted). Where the Commissioner has not alleged any prejudice, the court

will consider the motion despite the *de minimis* delay under the local rules.

     B.    *Substantial Justification*

Under the EAJA, the court "shall award" attorney's fees "unless the court finds that the

position of the United States was substantially justified or that special circumstances make an

award unjust." 28 U.S.C. §2412(d)(1)(A). The test of substantial justification is one of

reasonableness: the government bears the burden of showing that its case has "a reasonable basis

in both law and fact" by a preponderance of the evidence. Castaneda-Castillo, 723 F.3d at 73.

The court's decision to award fees under the EAJA is independent from its review of the merits

of the case and requires that the court examine (1) whether the agency decision that gave rise to

the litigation was substantially justified and (2) whether the government's litigation positions

also were substantially justified. See Dantran, Inc. v. United States DOL, 246 F.3d 36, 41 (1st

Cir. 2001) ("To satisfy its burden, the government must justify not only its pre-litigation conduct

but also its position throughout litigation").

Social Security proceedings are fairly unique in that they are "inquisitorial rather than

adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and

against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-111 (2000). Here, the court

concluded that although the ALJ claimed to have heavily relied on Dr. Toczylowski's opinion,

he did not sufficiently develop the record insofar as he did not provide any reason for the

discrepancy between his assessment of Plaintiff's ability to use his right arm and Dr.

Toczylowski's contrary opinion. Order 4 [#27]. Because the ALJ's findings were incomplete, it

was "impossible to determine whether [the ALJ] merely discredited [Dr. Toczylowski's]

assessment or, in fact, overlooked [it]," Nguyen v. Callahan, 997 F. Supp. 179, 182 (D. Mass.

6

1998). And because this discrepancy had downstream effects on the ALJ's assessment of Plaintiff's claim, the court concluded that the ALJ had committed both legal error (incomplete development of the record) and factual error (disability determination based on mischaracterization of treating physician's opinion) requiring remand. Order 5, 8-9 [#27]. The Commissioner's position in this litigation therefore lacks a reasonable basis in both law and fact.

The Commissioner argues that Plaintiff is not entitled to fees because the Commissioner was substantially reasonable in her position that substantial evidence supported the ALJ's residual functional capacity finding. Specifically, the Commissioner argues that an ALJ "may piece together relevant evidence and make common-sense judgments" in making the residual function assessment. Opp. 7 [#39]. That is true in a general sense, see Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990), but where the ALJ failed to provide the court with a sufficient record to support his judgment, the court cannot know whether it was one based on common-sense. "A position which is substantially justified at the initiation may not be justified later in the agency's continuation of the litigation." Schock v. United States, 254 F.3d 1, 5 (1st Cir. 2001). Here, the Commissioner does not address the ALJ's failure to properly develop the evidence on which he relied in making his residual function capacity finding but rather rehashes her arguments in support of the ALJ determination, which the court already found lacking on two occasions. Order [#27]; Mem. and Order [#33]. The Commissioner's litigation position is therefore not substantially reasonable.

C.    *Amount of Fee Award*

Having established that Plaintiff is entitled to attorney's fees under the EAJA, the court now turns to the reasonableness of the fees requested. See Comm'r, I.N.S. v. Jean, 496 U.S. 154, 161 (1990). In his Motion for Attorney's Fees [#34], Plaintiff requests $10,515.18 in fees and

$1,355.95 in expenses. In his Supplemental Motion for Attorney's Fees [#42], he requests an

additional $1,733.00 in fees based on subsequent hours worked on the motion for attorney's fees.

The Commissioner does not contest the number of hours claimed, the hourly attorney rate, or the

requested expenses. Opp. 8 [#39]. However, the Commissioner requests that the fees be reduced

because Plaintiff billed travel time at the hourly attorney rate. The court agrees.

While travel time is reimbursable, it is typically not reimbursed at the same rate as

substantive legal work. See Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 15 (1st Cir. 2011).

Although "there is no hard-and-fast rule establishing what percentage of an attorney's standard

billing rate is appropriate for travel time," id., "courts in this circuit typically reduce attorney

time spent solely on travel by fifty percent," Sinclair v. Berryhill, 284 F. Supp. 3d 111, 117 (D.

Mass. 2018). In this case, Plaintiff's fee request includes 14.6 hours of travel between May 8,

2018, and May 11, 2018. Pl. Atty Declaration 2 [#37-1]. Accordingly, the court reduces that

period to 7.3 hours, resulting in fees of $10,776.57[2] plus the uncontested $1,355.95 in expenses,

for a total of $12,132.52.

_____

[2] Plaintiff requests the following fees:

| Year | Hours | Rate | Total |
|------|-------|------|-------|
| 2019/2020 | 10.2 | $206.31 | $ 2,104.36 |
| 2018 | 47 | $201.59 | $ 9,474.73 |
| 2017 | 3.4 | $196.79 | $  669.09 |

Pl's Mem. 7 [#37]; Pl's Supp. Aff. [#43]. Of the hours itemized in Plaintiff's attorney's
Declaration [#37.1], 14.6 of the 2018 hours were for travel. With the fifty percent reduction for
those travel hours, the fees are awarded as follows:

| Year | Hours | Rate | Total |
|------|-------|------|-------|
| 2019/2020 | 10.2 | $206.31 | $ 2,104.36 |
| 2018 | 39.7 | $201.59 | $ 8,003.12 |
| 2017 | 3.4 | $196.79 | $  669.09 |

**III.     Conclusion**

For the reasons stated above, Plaintiff's <u>Motion for Attorney's Fees</u> [#34] and

<u>Supplemental Motion for Attorney's Fees</u> [#42] are ALLOWED in the amount of $12,132.52.

IT IS SO ORDERED.


Date: November 16, 2020                                      <u>/s/ Indira Talwani          </u>
                                                            United States District Judge